at all, and we have Mr. Will for the appellant, and we have Mr. Dolf Dooley for the appellee. You may begin, Mr. Will. Thank you. May it please the Court. We're here obviously on an interlocutory appeal in what I believe is a case of first impression, although I also believe it can be decided by applying well-accepted basic principles of Illinois contract and trust law. And of course the question is whether a trustee of a trust can bind the beneficiaries to an arbitration clause in a contract that the trustee signs. And under the facts and the law, the answer to that question is yes. We begin with the default position that I believe that the Court is aware of, which is that the law favors arbitration clauses generally. This district has a long track record favoring arbitration. It is unable to look at this on a de novo basis because there are no facts in dispute. We have a record of the pleaded facts in the complaint as well as an affidavit which supplemented with some additional facts including the contracts at issue, some trust amendments and so on that were not part of the original First Amendment complaint. There's really two questions here. The first question is whether the arbitration clause in these contracts is broad and generic and would encompass the type of claims that the plaintiffs in the case have asserted. And we believe that the answer to that question is yes. We've cited the Bass case for the proposition that these types of broad generic claim, not claim specific but sort of all encompassing claims, are the type of clauses that enable a person to argue that if a claim brought that is significantly related to or has a nexus with the contract at issue, that is sufficient to render that subject to the arbitration clause. And then in addition, the second question, plaintiffs are actual beneficiaries of a trust. And so therefore we maintain that they're clearly third party beneficiaries of these particular contracts that were signed by the trustees. And again, we've cited several cases, none of which in Illinois are exactly on point, but we believe that French v. Wachovia case well illustrates the point of third party beneficiary status of trust beneficiaries when you have a trustee signing a contract that has an arbitration clause. Are they named in the trust, the beneficiaries? The beneficiaries are named in this trust, yes. Is it a separate document? I didn't see it. The original trust is attached to the First Amendment complaint, which I believe appears in our appendix. Okay. And the names of the plaintiffs are listed in there? Yes, Your Honor. They are specifically listed as remainder beneficiaries. This was a 24-24 trust. Mr. Hoot was a You're talking about the Marvin F. Hunt Revocable Trust? Yes, Your Honor. And you're saying it was attached to the backup? Page 869. Page what, 69? Yes, that's correct. That is where the Yeah, that's the trust. Right. Oh, and you're asking whether, okay, I misunderstood. No, I don't believe that their names per se are listed. Their relationship is described in the trust, but they didn't name them specifically. Are there documents somewhere in the record that identify them as beneficiaries of this trust? The complaint does, the First Amendment complaint, and you accept that as true for purposes of this appeal. We're not questioning that they're beneficiaries. They plead that they are beneficiaries of the trust. And really, that's the only way they have standing because the whole point of this is that they were beneficiaries, remainder beneficiaries, and they're saying that it was improper for Merrill Lynch to have Are beneficiaries a part, generally speaking, are beneficiaries a part of the trust? Yes, Your Honor. The trustee is obligated to act on behalf of the beneficiaries. But beneficiaries are a requirement of a trust? That's correct. You need to have three things, grantor, trustee, beneficiaries. And sometimes you can have And those three parts make up the trust. That is correct, Your Honor. Now, sometimes you can have one person be more than one thing. Well, then why would you argue that they're third-party beneficiaries to the trust if they are part of the trust itself? Well, you could, that would be Maybe that's a matter of semantics or something. I couldn't figure that out. Why they weren't argued, why nobody argued that they were part and parcel of the trust? The only reason that we did that was because in the other cases that we found, actually no one had made the argument that since they're actual beneficiaries, they're actually parties to the agreement itself. So we sort of felt bound by, to the extent, the precedent that we did find French, for example, that was more of a third-party beneficiary argument. But your point's well taken. The fact would be that because they are actually part of the trust, and the trust is an entity into itself, and the trustee signs that contract, then everybody is bound, the grantor, trustee, beneficiaries. It may be a distinction without difference, but, I mean, I don't know. In this case, it probably, it wouldn't matter either way. If they're, either they're a third-party beneficiary by virtue of the analysis that most of the courts go through, or they're an actual beneficiary, and therefore they're part of the entity itself that signed, that was bound by the contract. The only other thing that I would add to what I've said is that the trustee, there was a question whether the trustee was capable of binding the beneficiaries, and, again, I think the answer to that is yes. The statute itself, 760 ILCS 5-8, basically says if you're someone dealing with the trust, you're entitled to rely on their, basically, apparent authority to act. Did Marvin sign a similar document with Edward Jones? That I'm not familiar with, sir. So that's not part of the record, then? No, I don't believe that is. But he did sign it, obviously, with Merrill Lynch. And that there was also the trustee affidavit that said, yes, I'm a trustee. I'm capable of acting. And, again, he was the grantor. I mean, it was his trust. It was his property. He could have amended the trust. He could have revoked the trust. He could have pretty much done with the property what he wanted to do. So there wasn't even any kind of yellow or red light that would have been flashing to say, hey, maybe there's some issue about whether this person has authority. Is there any evidence as to what matches? Is there any language in the trust that specifically provides that all trustees are required  No, Your Honor. There is language that talks about there being an appointment of a successor trustee. And I concede that. But I don't think that's where the question ends. I read through Golder. I read through Rubenstein. And I read through the Edgeworth case. And the way I read Golder is, if you have that type of mandatory language, that's the only instance in which it's even possible to make the argument that maybe you have to have unanimous actions of the trustees. But it doesn't mandate it, as in Golder, the court found that notwithstanding that there was only two trustees and a third one was vacant, that particular transaction, which was a conveyance of property, was valid. In this case, I believe if you look at the trust, what you'll see is there are certain particular things where the trustee's power is limited, but there is not an evidence that there has to be both trustees acting to do all Is there anything in the record where just Marvin as one of the trustees acted on behalf of the trust? Any examples? Signing the CRA and signing the trustee certification would be an example of that. He did it on his own. And he did it after his wife had passed away. He also signed the That's why I asked you on the original dealings with Edward Jones, whether or not both of them were required to be on there, they had to act together, or could one of them act and bind the trust individually? That I really cannot answer. I don't know the answer to that. I'm afraid. But in any event, it seems to me that the default under Illinois law is one trustee can act unless there's pretty clear prohibition that you need both. And you claim that there's no language in the trust that would require the unanimous participation of all the trustees before the trust can act? Certainly not for entering a contract. Like I said, there might be some other instances. And, of course, Golder, those all dealt with in actual conveyance of property, but not with respect to just a general entry of a contract. I don't see anything in the contract that would be interpretable that way. And I think to overcome the presumption in Illinois that a trustee can act to bind a trust, and especially here, where it's the grantor of the trust, I think that you'd have to have something very specific that says both trustees act. I mean, even where you have the notice provisions, for example, the grantor can do these things, just give notice. And there may be some technical issues with respect to the trust amendments, but I don't think that that renders them invalid. And I also don't believe that the trust mandates two trustees. I couldn't find a language. It's kind of vague, really. It wasn't the model of clarity. But I think you have to find something pretty positive in order to say that it would be a case in which a trustee is bound to act with the other trustee. I mean, especially, you're setting yourself up, in this case, you'd be setting yourself up for some trouble anyway, because you only got two. Well, what happens if they disagree? You have a deadline. You know, where you have these majority act, like the statute talks about majority acting, you have at least three trustees. And the cases, in fact, Boulder, those were all three trustee cases. So it's, again, a little bit of a different situation. One would think if you were having that kind of case here, you'd have a real problem. If you had to have both act and they disagreed, you couldn't do anything. And I think that would certainly be contrary to the general intent of the grantor. And I'll just close. I think I've made my points, unless you have any additional questions for me. I just close by saying that it seems to me that it's rather ironic that the plaintiffs here are claiming that, in their case, that Merrill Lynch has some sort of a confidential or fiduciary relationship sufficient to establish a tort claim, and yet too distant to support the notion that there's some obligation on their part to acknowledge the very contract that was signed by the trust, out of which all of this arose. Thank you. Thank you, Mr. Merrill. You'll have the opportunity to rebut. Thank you. Mr. Dooley? Thank you, Your Honor. Good morning. Good morning. Obviously, we have a difference of agreement, and obviously, we believe that the trial court made the correct decision. In this case, Your Honor, there's actually an argument in three questions that have to be decided before you can send this case back and tell the trial court to do a different decision. First off is the question of whether or not a single trustee under this trust agreement had authority to bind the trust after the original co-trustee had passed. And we think the question is, and we think the trial court got it right, we think the answer to that question is no. The trust, and Your Honor, I think the provision you have to look at, first off, with regards to the trust, is you have to look at page 879. And page 879, section 8, specifically says that if the co-trustee, in this case, if Betty, the original, I'm sorry, if Grant, her spouse, dies, then it says there shall be successor trustees, and they shall either be Betty Schmitz, Bradley Schmitz, or Andrea Huth. So this will, or this trust, requires a successor trustee. This is not a case in which there's a may. This is not a case of anything other than the language shall. And until there is a successor trustee appointed, this particular trustee, Mr. Huth, cannot act and bind the trust. The trust is replete with the reference to trustees, in a plural, not in the singular fashion. And the provision that Mr. Will refers to is the provision that talks about self-dealing.  Is there language that requires both trustees, both co-trustees, to agree before it can be an official legal act of the trust? Is there specific language that says all trustees must uniformly agree before an action? No. But the trust, as you noted, the trust is not the most profitable, the best-written trust in the world. And what this trust says, you've got to step back and think about what this trust was designed to do. These were husband and wife who execute mutual trust that say, I'm going to give everything to you when I die, husband. You're going to give everything to me when we die, when you die, wife. And we're going to hold what we have until we pass and then give it on to our kids and our grandkids. This trust was specifically designed to prevent the interloper situation that we have here. These trusts were designed so that the surviving spouse would have some measure of putting the brakes on before the trust would be amended. And there wasn't a big break. All it said was you had to give notice, there had to be a successor trustee, and you had to give notice of the amendment to the successor trustee before it happened. So in this case, what the idea was that the kids or the grandkids could talk to Marvin before he amended the will to see whether or not this is something he really wanted to do. I think that's about the only breaks they had in this, the preventive. But it was in here, and as this court knows, and it's said on multiple occasions, if it's written in the trust, the trustees got to abide by the terms of it. In this case, it does say shall. And in this case, the trust does only refer to trustees in the plural, not in the singular. There's a difference between the requirement to have multiple trustees and the requirement that multiple trustees are required before the trust connects. There's a little bit of distinction there. Except for when it requires multiple trustees in a shall capacity, then the implication is that you have to have multiple trustees head. And that's what the cases that we cited in our brief stand for. This is not a situation where you may have another trustee. This is one where it's shall. And so the implication is that you're required to have multiple trustees in this case, too. What effect does L1 statutes on trust in the Trustees Act that Section 5 backslash 8 have? In this case, nothing. But then here's why. Because what the statute says is that there is no implied duty to go out and check anything. But in this particular case, they knew. They had the original trust. They admit that. They admit they had the amendments. All we're saying is, look, if you have the trust documents and you have the trust amendments, you have a duty to read them. This isn't rocket scientry here. So they're client agreements, and they're what the other one called? Well, they're just called CRC. Those are the CRC judges. We never pled the CRCs in any of our complaints. We don't even agree that the CRC controls what we say is the issue in this case. It says anyone dealing with the trustee is not obliged to inquire as to the trustee's powers. The statute says that, Judge, but what we're saying is we have pled. And may assume that the trust is, you know, I mean. But they have firsthand knowledge. They know. They know what? They know that they have the trust. They have the amendments to the trust. They have the ability to read the trust. And what we're saying, Judge, is they knew that the wife had died. So they knew there was only one trustee. And it's our position that a proper reading of the trust required them to say, wait a second. Marvin individually does not have authority to act. And they knew all that. The statute is saying they don't have a duty to go out and affirmatively find it. But in this case, they knew it. So you think all the brokerage firms, if they've got a copy of the trust, they've got to go back any time a person dies and check that out? I think, Judge. That's a pretty good burden you're putting on the brokerage firms. First off, verify fiduciary, Judge. First off, verify fiduciary. They have a fiduciary relationship. I agree with you. And I think, yes, Judge. More than just having them sign the affidavit or the sworn statement that, yes, I am a trustee. Here's the amendment that the grantor has provided us here. And I'm the what? Let me address it in two parts, if I may, Your Honor. First off, what prevents me from saying I am the trustee of the Barack Obama Hidden Trust and signing it and going to the bank and getting those doors? That's what they have here. If their position is correct, then anybody who comes in and is willing to sign an affidavit has control of the assets. Now, that can't be the law, and that isn't the law, Judge, because here's why. They have a duty under the law to maintain that the money they have is not given access to the wrong person. And in this particular case, they admit, we plead, that they have a custodial relationship control of a million dollars in excess in an account. And that what we say they did is they gave that million dollars to someone who wasn't authorized to take it. And what their CRC say, they tell you or they tell us that there are other account agreements that may control the relationship. They also had a trustee certification form that was sworn to and signed, too. I agree with you, but, Judge, you have to remember, what we've pled in our complaint is, first off, that the amendment is no good. The amendment on its face, the one that they hang their hat on, that particular, that appoints this person as the trustee, that amendment doesn't even properly refer to the trust. That amendment doesn't even have the right date on the trust. So if you take what we plead… How did the fiduciary relationship begin? How did it begin? Yeah. We plead in our complaint that it began when they agreed to take the million dollars plus, the trust pad, and the whole safe card. From who? They took it from the trustee at that time. The account was originally… Who would have been? Marvin. Marvin and his wife. And that was permissible at that time? That was okay? We plead in the complaint that the relationship began at the time when there was Marvin and his wife were in existence and had power to find the trust and to establish the trust account. Now, do I… They have brought some facts into the records that we have not done no discovery on. So at that time, were your clients part of the trust? No, not yet. We couldn't… Pardon me? No, because we're beneficiaries of the trust after Marvin dies or after the wife dies. We didn't… Are beneficiaries part of the trust? When the trust is established? Yes. No. We're not bound by what the trust does. We're… This… That's another thing. If you look at the CRC agreements, they are not signed. They are signed as an individual. The language of the CRC agreements, they're documents that they come here and… They were good enough to establish a fiduciary relationship. You just told me that. Well, no. I think that's what you said. I do not base anything in my complaint on these things called the CRC or the CRA agreements. I said, and it's undisputed, that they have a million dollars or more of trust assets. And I say that then giving that trust asset to somebody who isn't authorized is the basis of my complaint. Okay? I do not say… In order to establish the fiduciary relationship. And Maryland's… And I say that Maryland's had the money. I don't plead how they got the money. I assume that there were some agreement, account agreement that they signed with the trust or with Mark. The CRCs that they have here refer to other agreements, specifically refer to custodial account agreements, that are not part of the record. They haven't given them to us yet. So I don't know what was the basis that… We haven't gotten that far yet. I don't know what the trust signed in order to deposit its $2 million plus with Maryland. I don't know what they signed. But here's what my allegation is. My allegation is that regardless of what they signed… It was enough to establish a fiduciary relationship. Because they're holding their money. It's a bailment. It's like any other bank account in the state. You've got to give access to only the people who are authorized to have access to the money. And we say that they knew or should have known by reading the trust agreement that they had and knowing that Benny had died. And you're saying that beneficiaries are not part of the trust? At the point when this relationship was established, there are no beneficiaries. The beneficiaries are contingent beneficiaries. They don't come into play. Okay. I understand they can't come, but they're not part of the trust. They're not. They cannot be. They are not bound by act. Your question is are they part of the trust? They are going to be beneficiaries of trust at some point in time if they survive. If they survive, they may be beneficiaries. Now, if they don't survive, then no. So it's hard to answer your question, but I do know this, Judge, that they are not bound by what the trustee does necessarily unless there's an intent by the trustee to bind them. And that's just laws of third-party beneficiaries. And the contracts that these guys bring forward to you do not even reference the trustee. The language that they hang their hat on doesn't even reference the trustee in its capacity as an alleged trustee. It specifically says the terms and conditions, you are you, means each person who has signed the terms of a client relationship agreement. That's page 837. This is the 041. And if you go to the 011, it's the same terms and agreements. It says this time it refers to I, and it says I and my and me means the person who signed this agreement. What page are you on? I'm sorry, Your Honor. The second page is A-18. That's the 01 agreement. And the first page I quoted from is A-37. And this case, if we have one case directly on point, and I disagree with you, Your Honor, so I think there's a case on point. It's the Nikon case that you guys decided not too long ago in which AT&T had a customer relationship agreement with its customers, and Nikon tried to come in and say, wait a second, we're a third-party beneficiary. And this court said AT&T knew it was selling Nikon phones. If AT&T really wanted to include Nikon. Nokia. Nokia, I'm sorry. You're right, Nokia. They wanted to include Nokia as a third-party beneficiary. They could have put it in the contract, and they did. And that's exactly what we have here. If we believe what they say, they're saying, look, we knew we were dealing with a trustee. We thought the trustee was authorized. Well, then why didn't they put in their agreement that the trust that this alleged agreement covers the beneficiaries of the trust? They don't even refer to the trust in the agreement. Well, if it binds the trust and if the beneficiary is part and parcel of a trust, there's no need to specifically include them. You're assuming for sake of argument yet, Judge, but that's not in there. They haven't said that. That's never been said. I mean, I don't – this is – a lot of this stuff is Greek to me. I'm just a dumb old trial lawyer, so I had to bone up on it. And you're bringing something that I just admittedly have no knowledge of. I couldn't tell you because it wasn't raised in front of this court. But – and the other thing – so first off, we don't think the trustees had a court. First off, Marvin didn't because his wife had died and there was no co-trustee. We say the second one that supposedly signed, that one is an imposter. We say that the amendments were bad, and we say that when Marvin signed the amendments, even if they are good, Marvin still didn't have a co-trustee, so the amendments are no good. So the first question is could the trustee sign the agreement? We say the answer is no, and we say that's a mixed question of law and fact, and we say you've got to defer to the trial court on that because there was some fact issues the trial court had to look at to make that determination. As to the second issue of whether or not we, the main beneficiaries now, are intended third-party beneficiaries of this contract, we say that if you look at the AT&T case, clearly we're not. They could have named us. They could have named the trust. They could have named the agreement. They could have wrote the agreement in such a fashion that it would cover us. It does not. We are not beneficiaries. And the other thing, other than the agreement, there is no evidence. There is no evidence at all from anybody at Merrill saying they intended to include us. And there's clearly no evidence from Marvin or Patricia as to what they intended when they signed the document. And lastly, and most importantly, or at least equally as importantly, is we do not believe that these contracts, alleged contracts, even cover the claims that we're asserting. These are not contract claims that we're asserting in this matter. I don't even take these agreements in my complaint. My claim does not arise out of these contracts. My claim arises out of the relationship that they established with my client or with the trust when they agreed to be the custodial carekeeper of $1 million to $2 million worth of trust assets. And by that, they had an obligation and a duty to make sure that it was returned to the proper person. And the case that they cite, the Bass case, does not stand for the proposition of a significant nexus or a significant relationship. What the Bass case stands for is if you're asserting a claim that could have been asserted in a contract, we're not going to allow you to call it something else and get around the contract. But first off, we're not a party to the contract that they allege. And on top of that, the contracts themselves deal with, and if you go back and look at the actual language itself, the contracts deal with securities. They deal with the regular brokerage account. Where are we supposed to go if this is arbitration? Where is it safe to arbitrate? To the NASDAQ, NASD, or whatever the new coverage. This is not – we're not – this isn't a brokerage claim. I'm not saying that they invested some little old lady money in a risky stock scheme and therefore I want the money back. That's what type – that's what arbitration agreement this is. What I'm saying is way more basic. And what I'm saying is something that arises not out of what the relationship is in a broker relationship. I'm saying that they had an obligation to safe keep the money that the trust gave to them and make sure it was only given to someone that was authorized to receive it, and they gave it to someone who wasn't. And at least – How long did the stepmother draw money from the account? Within six months after his death from the account. And for what period of time? Does the record show what period of time she drew the million dollars out or something? No, the record doesn't show that yet. I know in other litigation how long it took, but I don't know. It's not in this record how long it took. But it was – I think we plead within six months after the date of Marvin's death. Was there just one withdrawal, the million dollars? No, there were a series of withdrawals. Or was it years and years and years of bleeding it? No, no. Within six months of his death, the account that we plead was – Depleted then? Was depleted. Okay. She established accounts in her own name and put some money in there. Other money went out, and we don't know where it went. Thank you. Thank you, Mr. Dooley. Do we have a rebuttal? Yes, Your Honor, just very briefly. If what I heard counsel say is correct, then I suspect that there are many trust and estate lawyers in the state of Illinois who are going to be extremely scared because I believe I heard counsel say that a trustee is not able to bind the beneficiaries of a trust. As a matter of general law, that, of course, is just not the case. That is not the law. And whether you be a contingent remainder beneficiary or a remainder beneficiary, you are a beneficiary. That your interest is contingent on certain things doesn't make you any less of a beneficiary. And for the purpose of this case, I think it's well established that this particular trust had as its beneficiaries the grantor during his lifetime, his wife, and the remainder beneficiaries, which were his children. It is not correct, and I want to point this out, that Mrs. Hoot, the original first wife, Shirley Hoot, was not alive when these accounts were taken in by Merrill. She had passed away in 1999. These accounts came to Merrill Lynch in 2001. So Mr. Hoot was the sole trustee. He was the only person that was acting at the time. The wife had already passed away. And they took these in under the contract. Again, counsel says, forget about the contract. Ignore the contract. Pretend it doesn't exist. That's the whole point of the Bass case, the whole artful pleading. You can't simply wish away the reality by saying, well, we just won't plead that. We'll pretend it doesn't exist. And that's why, in this case, we supplemented the record, as we were permitted to do, under 2-619 with an affidavit. And all the affidavit does is say, here are the contracts. Here are the trust certifications. Here are the amendments. All we have is what we have in front of you. You look at this, and you determine from this whether or not there was a valid and binding contract. And I believe that the answer is the intent of the person who signed is clear from the face of the instrument. You don't need separate evidence saying, my intent was to bind the beneficiaries. I mean, that can be read from the four corners of the contract. These people were acting. They were taking trust assets, putting it in. And he was putting it into this trust account, which was a brokerage account. And it was administered by the New Orleans people for a number of years. He got remarried. That is the second trustee who he appointed in the Second Amendment. I grant you they're saying there's some issues about how the appointment was made and so on. But if you step back a little bit, and I'm not aware of anything in the record that talks about the reciprocal trust. I know there was some mention to it, but I looked in the amendment complaint, and I didn't see a reference to the reciprocal trust. But let's just look at the Marvin trust. He had two purposes. He wanted to set up a marital trust for his wife. It wasn't even named. She said his wife. And then as the remainder of beneficiaries, if there's something left. Well, his wife at the time that he died was Patricia Bartsokas-Hugh. She was a natural object of his bounty at the time. She was married to him. He appointed her as his trustee. He did it over a year before he died. And I don't see that there's anything there anyone is suggesting that he didn't have capacity or was off his rocker. So you have a situation where, again, as I said, there's no red light. There's no yellow light here. I mean, if you look at these things, and even if you accepted counsel's position that there was some duty on the part of the person who's getting these funds or entities to kind of look behind the screen a little bit, well, I think that under this circumstance, there would be no reason, again, to question that this was certainly a valid act on the part of the person. What's the status of the trust now? The trust is still in existence. I mean, the question of. . . How many trustees are there? Well, it depends. I mean, Patricia Barzokas-Hughes is still a trustee, and presumably if you say one of the current plaintiffs would be a co-trustee, if that, in fact, were appointed. But there's been nothing that's gone on as far as trust business. Is the account still open in Maryland? The account, I believe, is still open. I'm not 100 percent sure. My time's up.